Harry HIGHTOWER, Appellant,

v.

STATE of Missouri, Respondent.

No. 22975.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 28, 1999.

Susan Kister, Clayton, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel W. Follett, Asst. Atty. Gen., Jefferson City, for Respondent.

CROW, Presiding Judge.

In *State v. Hightower*, 951 S.W.2d 712 (Mo.App. S.D.1997), this court affirmed Appellant's conviction, per jury trial, of robbery in the first degree, armed criminal action, and tampering in the first degree.

Appellant thereafter commenced an action for post-conviction relief under Rule 29.15,[1] complaining that the lawyers who represented him at trial ("Trial Counsel") rendered ineffective assistance in several respects. The motion court denied Appellant's request for an evidentiary hearing and ultimately issued findings of fact and conclusions of law rejecting all of Appellant's complaints. This appeal followed.

■ One of the questions this court faces is whether Appellant was entitled to an evidentiary hearing on any issue raised in this appeal. In that regard, this court notes a prisoner seeking post-conviction relief must meet three requirements to obtain an evidentiary hearing. *State v. Starks*, 856 S.W.2d 334, 336[2] (Mo. banc 1993). The requirements are: (1) the prisoner must allege facts, not conclusions, warranting relief, (2) the facts pled must raise matters not refuted by the files and records in the case, and (3) the matters complained of must have resulted in prejudice to the prisoner. *Id.*

The first of Appellant's two points relied on avers Trial Counsel were remiss in failing:

" ... to Move for an Automatic Change of Venue Under Rule 32.03, in Light of the Fact that the Trial was Held in a Small Town, Jurors Knew Each Other, Knew State's Witnesses and Persons Employed by the Victim's Business, had Favorable Feelings Toward the Prosecutor and had Heard About the Case, and Where Appellant Qualified Under the Rule for a Change of Venue Because the County had Less than 75,000 Inhabitants."

In *State v. Weaver*, 912 S.W.2d 499, 518[54] (Mo. banc 1995), *cert. denied*, 519 U.S. 856, 117 S.Ct. 153, 136 L.Ed.2d 98 (1996), a prisoner appealed from the denial of post-conviction relief, complaining that his lawyer rendered ineffective assistance in the trial court by failing to seek a change of venue due to pretrial publicity. The Supreme Court denied the complaint, holding that the record supported the motion court's finding that the failure to seek a change of venue did not prejudice the prisoner. *Id.*

In *Jones v. State*, 824 S.W.2d 441 (Mo. App. E.D.1991), a prisoner sought post-conviction relief on the ground that his lawyer was ineffective by failing to seek a change of venue. Affirming the motion court's denial of relief, the appellate court held the prisoner failed to prove the result of the trial would have been different had a change of venue been sought. *Id.* at 442[1].

■ Consistent with *Weaver*, 912 S.W.2d at 518[54], and *Jones*, 824 S.W.2d at 442[1], this court holds Appellant was not entitled to an evidentiary hearing on the ineffective assistance claim in his first point if the record shows he was not prejudiced by Trial Counsels' failure to seek a change of venue. If the record demonstrates the result of the trial would not

---

1. The current version of Rule 29.15 has remained unchanged since July 1, 1997. Appellant commenced his post-conviction action December 5, 1997.

have been different had a change of venue been sought, Appellant cannot show prejudice.

Appellant bases his first point on disclosures by certain venire members during voir dire. The disclosures are identified in the statement of facts in Appellant's brief.

One of the disclosures was that venire member Summerfield was married to the sister of venire member Housman. Asked whether she could come to a different decision than Summerfield, Housman replied: "Sure. We don't agree on a lot of things."

Asked whether he could "hold [his] ground with [Housman,]" Summerfield answered: "Sure can."

Furthermore, neither Housman nor Summerfield served on the jury, hence Appellant could not have been harmed by their presence on the venire. Finally, a change of venue would not have guaranteed that no member of the venire in the new venue was related to any other member.

This court holds Appellant's complaint about Housman and Summerfield is meritless, if not frivolous.

Another disclosure on which Appellant bases his first point is that venire members Cogdill and McClendon worked for the same employer. Asked whether she was Cogdill's boss or he was her boss, McClendon answered: "No." McClendon added that Cogdill could make a decision without consulting her.

Cogdill revealed McClendon was his fiance. Asked whether he could "look her dead in the eye and disagree with her," Cogdill responded: "Yes, sir, for any reason." McClendon agreed with Cogdill's answer.

Although Cogdill and McClendon served on the jury—neither side challenged either of them for cause or peremptorily—the record refutes any notion that their relationship harmed Appellant. Furthermore, as with Summerfield and Housman, there is no assurance that a change of venue

would have produced a venire in which no member worked with any other member or in which no member was betrothed to any other member.

This court finds no merit in Appellant's complaint about Cogdill and McClendon.

Another basis for Appellant's first point is that, according to Appellant, the prosecutor "was on a first-name basis with more than one panel member."

The record refutes that allegation.

At the outset of voir dire, the prosecutor announced he saw no one in the room whom he knew. He continued: "Is there anybody here that knows me? I'm actually an assistant prosecutor down here without pay, and I'm also one that's paid in Cape County."

No venire member responded.

This court deduces from the statement of facts in Appellant's brief that he assumes the prosecutor was on a "first-name basis" with some venire members because the prosecutor addressed venire member Vickie Pazdera as "Miss Vickie" and addressed venire member Cogdill by his forename, Jeff.

The prosecutor's use of forenames in addressing venire members does not compel an inference that the prosecutor was on a "first-name basis" with them, particularly where neither Pazdera nor Cogdill indicated they knew the prosecutor. Furthermore, Pazdera did not serve on the jury, as the prosecutor challenged her for cause and Trial Counsel joined in the challenge, which the trial court granted.

This court holds the record refutes Appellant's premise that he was prejudiced because the prosecutor was on a "first-name basis with more than one panel member."

Another voir dire disclosure on which Appellant bases his first point is that venire member Whitney "was employed at Town & Country at the time of the robbery, though he knew nothing about it." As detailed in this court's opinion affirm-

ing Appellant's conviction, the robbery victims were employees of Town & Country Grocery Store in Charleston, and the money taken from them at gunpoint belonged to the store. 951 S.W.2d at 713–14.

The prosecutor challenged venire member Whitney for cause on grounds that need not be set forth here, and the trial court granted the challenge. Appellant can therefore demonstrate no prejudice from Whitney's presence on the venire.

Another basis for Appellant's first point is, in Appellant's words, "[o]ne panel member's wife was the cousin of the [Appellant.]" The venire member who made that disclosure—Gentry—was challenged for cause by the prosecutor on grounds that need not be set forth here. Trial Counsel joined in the challenge, which the trial court granted. The record therefore confirms Appellant was not prejudiced by Gentry's presence on the venire.

Another allegation by Appellant in support of his first point is that venire member Pazdera "was the sister of State's witness Robin Slater."[2] As reported earlier, the trial court granted the prosecutor's challenge for cause against Pazdera, a challenge in which Trial Counsel joined. Obviously, Appellant suffered no harm from Pazdera's presence on the venire.

Appellant also avers one venire member "was Slater's[[3]] neighbor." That venire member—Ford—did not serve on the jury. Although the record does not show why, it is evident Appellant was not harmed by Ford's presence on the venire.

Appellant also complains that other venire members "knew State's witness Clinton Cossey."[4] This court divines Appellant is referring to venire members Housman and Johnson. As noted earlier,

Housman did not serve on the jury. Neither did Johnson.[5] The record thus establishes Appellant was not harmed by the presence of Housman and Johnson on the venire.

In sum, the record demonstrates Appellant was not harmed by Trial Counsels' failure to seek a change of venue insofar as venire members Housman, Summerfield, Pazdera, Whitney, Gentry, Ford and Johnson were concerned, as none of them served on the jury.

As to venire members Cogdill and McClendon (who worked for the same employer, were engaged, and served on the jury), a change of venue would not have assured a venire on which no members were co-workers or betrothed. Furthermore, Appellant cites no authority supporting a hypothesis that an accused is prejudiced if his jury includes co-workers or a couple planning marriage. Consequently, this court concludes from the record that Appellant was not harmed by the presence of Cogdill and McClendon on the venire, hence their presence did not demonstrate Trial Counsel were ineffective in failing to seek a change of venue. In so holding, this court has not overlooked another complaint by Appellant about McClendon not yet discussed. That complaint is addressed in this opinion's discussion of Appellant's second point, *infra*. For the reasons set forth there, this court finds that complaint meritless.

Appellant also complains about three other venire members not yet mentioned: Bogle, Thomas and Owens. All three served on Appellant's jury. As shall become evident *infra*, had Appellant desired to exclude them, he could have challenged

---

**2.** This court assumes Appellant meant Robin Slaten, whose testimony is summarized in 951 S.W.2d at 714.

**3.** Footnote 2, *supra*.

**4.** This court assumes Appellant meant Clifton Cossey, one of the robbery victims. 951 S.W.2d at 714.

**5.** The prosecutor challenged Johnson for cause but the trial court did not grant the challenge. It is inferable the prosecutor thereafter challenged Johnson peremptorily; however, the jury list is not in the record, hence this court cannot confirm that suspicion.

them for cause and, if unsuccessful, stricken them peremptorily. In that regard, Appellant makes no contention that he had to use a peremptory challenge against a venire member whom the trial court should have removed for cause.

Based on the foregoing analysis, this court holds the record establishes Appellant was not harmed by Trial Counsels' failure to seek a change of venue. Accordingly, Appellant was not entitled to an evidentiary hearing on that claim of ineffective assistance, and the motion court did not err in denying that claim. Appellant's first point is without merit.·

Appellant's second point maintains the motion court clearly erred in denying postconviction relief in that Trial Counsel rendered ineffective assistance:

" ... for Failing ... to Agree to Remove Juror Bogle for Cause Due to Her Expressed Inability to Pay Attention; for Failing to Move to Remove Juror Thomas for Cause when he Said he was on Medication, and would have Difficulty Paying Attention, and Because he had Family Relationships with State's Witnesses; for Failing to Peremptorily Move to Strike Jurors Owens and Bogle who had Heard About the Case; and for Failing to Peremptorily Move to Strike Juror McClendon who Knew a State's Witness Whose Credibility Would Come Under Attack by the Defense."

Because McClendon has been mentioned earlier, Appellant's averment regarding her will be addressed first.

During voir dire, this dialogue occurred:

"[Prosecutor]: Okay. Anybody else that knows the participants? Yes, ma'am.

MS. MCCLENDON: I know Robin [Slaten], but that wouldn't be any problem for me.

[Prosecutor]: You wouldn't have any difficulty in dealing with her, just like anybody else that sits right up there?

MS. MCCLENDON: No, sir."

Citing the above exchange, Appellant maintains Trial Counsel were ineffective in failing "to peremptorily strike juror McClendon, who knew a State's witness later discredited by the defense." Appellant's brief does not explain how Slaten was "discredited," and yields no enlightenment as to why the above colloquy demonstrates Trial Counsel should have stricken McClendon peremptorily.

As recounted in this court's opinion affirming Appellant's conviction, Slaten, an office worker at Town & Country Grocery Store, placed the store's cash, food stamps and checks in bags, then turned the bags over to the store's night manager for delivery to a bank. 951 S.W.2d at 714. The robbery occurred at the bank; Slaten was not present. *Id.*

This court has studied the eight pages of Slaten's cross-examination by Trial Counsel, which focused on details such as whether the cash amounted to $3,500 or $3,800, whether some of the money was "rubber banded" or "paper clipped," and whether four fifty-dollar bills were among the cash.

■ Because (a) McClendon avowed she could treat Slaten like any other witness, (b) Slaten was not present at the robbery, and (c) Slaten was "discredited" only in the sense that some details of her testimony about the amount of cash, its packaging, and the denominations of some bills conflicted with earlier statements by her on those subjects, this court holds the record refutes Appellant's contention that Trial Counsel were ineffective in failing to strike McClendon peremptorily.

■ Appellant's complaint about juror Owens is based on the following dialogue that occurred when the prosecutor asked the venire whether anyone had "heard about the robbery":

"MS. G. OWENS: Geraldine Owens.

[Prosecutor]: Yes, ma'am. Ms. Owens, can you be fair and impartial?

MS. G. OWENS: Yes.

[Prosecutor]: You've heard information about this. Has it made you make up your mind?

MS. G. OWENS: No."

■ To prevail on a claim that his lawyer was ineffective in failing to strike a venire member peremptorily, a prisoner seeking post-conviction relief must show the venire member sat on the jury and was actually biased against the prisoner. *State v. Davis*, 963 S.W.2d 317, 330–31[35, 36] (Mo.App. W.D.1997).

The record refutes any notion that Owens was biased against Appellant. This court therefore holds (1) Appellant was not entitled to an evidentiary hearing on his claim that Trial Counsel rendered ineffective assistance in failing to peremptorily strike Owens, and (2) the motion court did not err in denying that claim.

This court next considers venire member Thomas. Appellant's second point presents two reasons Trial Counsel allegedly should have challenged Thomas for cause: (1) he was on medication and would have difficulty paying attention, and (2) he had family relationships with State's witnesses.

During voir dire, the prosecutor asked whether any venire member "would have difficulty sitting here concentrating on what happened." Thomas responded: "I've been sick for about five days and I've been taking medication.... I've got a bad cold."

Later during voir dire, Thomas revealed: "I know all the people involved in this." Thomas subsequently amplified that disclosure: "The manager at the time was my brother-in-law, the meat manager is my brother-in-law, and my nephew was a sacker." Then, this:

"[Prosecutor]: So you're real tight, then, with Town & Country?

MR. THOMAS: Yeah.

[Prosecutor]: Now, have you made your mind up?

MR. THOMAS: No, I haven't.

[Prosecutor]: Have they all talked to you about the case and you, of course, have got some inside information on it. And basically—But you can sit here and listen to the evidence before you make a—

MR. THOMAS: I'm pretty sure I can."

At another point during voir dire, the following exchange occurred:

"[Prosecutor]: ... Do you know that ... we're prosecuting the Williamses for the Mike Ivey killing? Is that going to affect the way you look at us here today?

MR. THOMAS: It might. Because Mike Ivey was a friend of mine.

[Prosecutor]: Okay. So you're saying that that might affect you, but it would affect you in a positive way as it relates to us as opposed to a negative way?

MR. THOMAS: Yes."

The motion court's reason for rejecting Appellant's claim that Trial Counsel were ineffective in failing to challenge Thomas for cause was that a lawyer's decision on whether to register such a challenge is "a matter of trial strategy and is therefore virtually unchallengeable." Additionally, the motion court held Appellant failed to produce any evidence showing Thomas was biased and was unable to set aside his "relationships with witnesses." Consequently, concluded the motion court, Appellant failed to show a reasonable likelihood that the outcome of the case would have been different had different jurors been selected.

Appellant maintains the record does not support the motion court's finding that Trial Counsels' failure to challenge Thomas for cause was a matter of trial strategy. Appellant argues: "At the very least, the motion court was deficient in not granting an evidentiary hearing regarding the retention of Mr. Thomas on the jury."

■ This court agrees Appellant was entitled to an evidentiary hearing regarding Trial Counsels' failure to challenge

Thomas for cause. Thomas's disclosure about his relatives working at Town & Country Grocery Store, coupled with his comments about the prosecutor's pursuit of "the Williamses" for "the Mike Ivey killing," indicate an attitude favorable to the State and, as Thomas said nothing during voir dire to counterbalance that mien, the record supplies no basis for the motion court's finding that Trial Counsels' failure to challenge Thomas for cause was trial strategy. *Compare: State v. Price,* 940 S.W.2d 534, 538–39[6] (Mo.App. E.D. 1997). Although Trial Counsel may have had a tactical reason for voicing no challenge for cause against Thomas, no such reason is discernible from the record.

This court is mindful that its review of the motion court's judgment is limited to a determination of whether that court's findings and conclusions are clearly erroneous. Rule 29.15(k); *State v. Storey,* 901 S.W.2d 886, 900 (Mo. banc 1995). Even under that narrow standard, this court holds the motion court erred in finding—without an evidentiary hearing—that Trial Counsels' failure to challenge Thomas for cause was a matter of trial strategy. The motion court likewise erred in holding Appellant failed to produce any evidence showing Thomas was biased. As explained in the preceding paragraph, voir dire produced responses from Thomas indicating an attitude favorable to the State. Consequently, this case must be remanded to the motion court for an evidentiary hearing regarding Trial Counsels' failure to challenge Thomas for cause.

The final complaint of ineffective assistance in Appellant's second point pertains to venire member Bogle.

Bogle revealed on voir dire that she had been "up all night with a migraine headache" and was feeling "a lot of tension" in her neck. Because of that, Bogle feared it might be difficult "to sit here and pay attention." Asked how the headache would affect her if it returned, Bogle answered: "Oh, I'll be sick. I would have to go home."

Later during voir dire, this occurred:

"[Prosecutor]: ... Anybody here heard about the robbery? ...

MS. BOGLE: Yes, I—

[Prosecutor]: No, don't tell me about it.

MS. BOGLE: Okay. Really, the only—

[Prosecutor]: Just, have you made your mind up? In other words, have you decided this case before you ever came in here?

MS. BOGLE: No.

[Prosecutor]: You can be fair and impartial and listen to the evidence.

MS. BOGLE: Right."

Following voir dire, the prosecutor challenged Bogle for cause, saying Bogle "told us she's had a migraine headache and would have trouble paying attention today."

The prosecutor challenged other venire members for cause, and Trial Counsel joined in five of the challenges (including, as noted earlier, Pazdera and Gentry). However, Trial Counsel did not join the prosecutor in challenging Bogle for cause, and the trial court did not grant that challenge.

Appellant's second point avers Trial Counsel were ineffective in two respects regarding Bogle: (1) failing to join the prosecutor in challenging Bogle for cause, as Bogle feared her headache might return and prevent her from paying attention, and (2) failing to strike Bogle peremptorily, as she had heard about the case.

As to Appellant's second complaint, Bogle avowed she had not prejudged the case and could "be fair and impartial and listen to the evidence." Those assurances were essentially the same as the assurances of juror Owens, set forth earlier. The reasons given by this court for rejecting Appellant's ineffective assistance claim regarding Trial Counsels' failure to strike Owens peremptorily apply with equal force to Appellant's complaint that Trial Counsel

rendered ineffective assistance in failing to strike Bogle peremptorily. Accordingly, this court holds Appellant's second complaint about ineffective assistance regarding Bogle is refuted by the record, hence the motion court did not clearly err in denying that claim without an evidentiary hearing.

■ As to Appellant's first complaint regarding Bogle, i.e., Trial Counsel were ineffective in failing to join the prosecutor in challenging Bogle for cause, this court notes Appellant did not plead in the motion court that Bogle's headache ever returned during the trial or that Bogle was otherwise distracted by any physical malady. Appellant thus failed to allege he was harmed by any ailment Bogle may have suffered. That omission alone was a sufficient basis for the motion court's denial of Appellant's first ineffective assistance claim regarding Bogle.

Furthermore, the one-day trial ended at 6:02 p.m., when the jury returned its verdicts. Appellant does not direct this court to anyplace where the record shows Bogle experienced any physical discomfort during the trial or was otherwise hindered in giving the case her full attention. This court therefore holds the record dispels any notion that Bogle was physically impaired during Appellant's trial.

For the reasons in the two preceding paragraphs, this court holds the motion court did not clearly err in denying Appellant's first claim of ineffective assistance regarding Bogle.

The judgment of the motion court is affirmed in all respects except the segment that denies Appellant's claim of ineffective assistance regarding juror Thomas in Appellant's second point. That segment of the motion court's judgment is reversed, and this post-conviction proceeding is remanded to the motion court for an evidentiary hearing on that claim alone.

PARRISH and SHRUM, JJ., concur.